UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| KAMERON S. TERRY, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | Nos. 4:08-CR-17-HSM-CHS-2 |
| | ) | 4:14-CV-38-HSM |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## **MEMORANDUM OPINION**

Before the Court is Petitioner's supplemented motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Docs. 69, 84].[1] The United States filed initial and cumulative responses in opposition [Docs. 77, 86]. Petitioner did not reply and the time for doing so has now passed. E.D. Tenn. L.R. 7.1, 7.2. Recently, Petitioner filed a motion to voluntarily dismiss the action without prejudice in light of *Beckles v. United States*, 137 S. Ct. 886 (2017) [Doc. 89]. The United States filed a supplement [Doc. 90] and response in opposition [Doc. 91]. For the reasons below, the motion for voluntary dismissal [Doc. 89] will be **DENIED** and supplemented petition [Docs. 69, 84] will be **DENIED** and **DISMISSED WITH PREJUDICE**.

**I.  BACKGROUND**

---

[1]  On June 20, 2014, Federal Defender Services of Eastern Tennessee (FDSET) filed a petition for collateral relief requesting vacatur of Petitioner's sentence based on the Supreme Court's decision in *Descamps v. United States*, 133 S. Ct. 2276 (2013) [Doc. 69]. On February 11, 2016, FDSET was appointed for the limited purpose of reviewing the case to determine whether Petitioner was eligible for collateral relief based on *Johnson v. United States*, 135 S. Ct. 2551 (2015). *See* E.D. Tenn. SO-16-02 (Feb. 11, 2016). Consistent with that appointment, FDSET filed a supplement to the original petition [Doc. 84].

In 2009, Petitioner pled guilty to conspiring to distribute at least five grams of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B) [Doc. 30 ¶ 1], and "knowingly and voluntarily waive[d] the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255," except for claims of ineffective assistance or prosecutorial misconduct [*Id.* ¶¶ 14(b)].

He faced a statutory penalty range of five to forty years' imprisonment [Presentence Investigation Report (PSR) ¶ 53]. Based on two prior convictions for aggravated burglary, the United States Probation Office deemed Petitioner to be a career offender under Section 4B1.1 of the United States Sentencing Guidelines with a corresponding Guideline range of 188 to 235 months' imprisonment [*Id.* ¶ 54]. This Court sentenced Petitioner to a below-Guidelines term of 170 months' imprisonment [Doc. 42]. No direct appeal was taken and Petitioner's conviction became final for purposes of § 2255(f)(1) on July 9, 2009, at expiration of time to file an appeal. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) (an unappealed judgment of conviction becomes final when the fourteen-day period for filing a direct appeal has elapsed).

Almost five years later—on June 20, 2014—Petitioner, through counsel, filed a § 2255 motion in which he alleged that he had been improperly categorized as a career offender in light of *Descamps v. United States*, 133 S. Ct. 2276 (2013) [Doc. 69].[2] The Supreme Court decided

---

[2] In *Descamps*, the Supreme Court explained how a sentencing court should identify an offense when the prior conviction involved the violation of a "divisible" statute—one which "comprises multiple, alternative versions of the same crime." 133 S. Ct. at 2284. Specifically, the Court explained that the sentencing court should employ a "modified categorical approach" and "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* at 2281. The decision made clear that "the job . . . of the modified approach [was only] to identify, from among several alternatives, the crime of conviction so that the court can" determine whether that variant of the offense qualified as a violent felony under the ACCA's definition of violent felony. *Id.* at 2285.

*Johnson v. United States*—invalidating the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)—on June 26, 2015. 135 S. Ct. 2551 (2015). Less than one year later, Petitioner supplemented his original petition with a challenge based on that decision [Doc. 84].

On March 6, 2017, the Supreme Court held in *Beckles* that the United States Sentencing Guidelines are "not amenable to vagueness challenges." 137 S.Ct. at 894. Two weeks later, this Court entered an Order (1) explaining that *Beckles* necessarily meant that "*Johnson* . . . does not undermine sentences based on Guideline enhancements;" (2) instructing the parties to "file any motion that they want[ed] the Court to consider in conjunction with, or prior to, ruling on [the instant] petition[] on or before April 1, 2017;" and (3) requiring that responsive pleadings be filed on or before April 15, 2017 [Doc. 87]. Shortly thereafter, this Court received the motion for voluntary dismissal [Doc. 89]. The United States responded in opposition [Doc. 91].

I.  **MOTION FOR VOLUTNARY DISMISSAL WITHOUT PREJUDICE**

Federal Rule of Civil Procedure 41(a)(1)(A)(i) provides that a movant may voluntarily dismiss an action without a court order by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment[.]" Subsection (B) states the following:

> Unless the notice of dismissal or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal—or state—court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

Fed. R. Civ. P. 41(a)(1)(B). By contrast, Federal Rule of Civil Procedure 41(a)(2) provides that "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Because the United States responded

3

in in opposition to the § 2255 motion and because that response addressed the merits of the petition, Petitioner's ability to voluntarily dismiss the instant action depends on Rule 41(a)(2).

Whether to grant voluntary dismissal under Rule 41(a)(2) is within the sound discretion of the district court. *Grover by Grover v. Eli Lilly and Co.*, 33 F.3d 716, 718 (6th Cir. 1994). An abuse of discretion exists "only where the [non-movant] would suffer 'plain legal prejudice' as a result of a dismissal without prejudice, as opposed to facing the mere prospect of a second lawsuit." *Id.* (quoting *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 217 (1947)). In determining whether the non-movant will suffer "plain legal prejudice," the district court should consider the following: "the [non-movant's] effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant." *Id.* (citing *Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471, 474 (7th Cir. 1988)). It is not necessary that every factor be resolved in favor of the moving party for dismissal to be appropriate. The factors only serve as a guide for the district court's consideration in making its determination. *See Rast v. City of Pigeon Forge*, No. 3:10-cv-52, 2011 WL 884941, at *3 (E.D. Tenn. Mar. 11, 2011) (quoting *Rosenthal v. Bridgestone/Firestone, Inc.*, 217 F. App'x 498, 502 (6th Cir. 2007)).

Petitioner cites the following in support of voluntary dismissal: (1) the petition contained a legitimate and meritorious legal challenge when filed but was later rendered non-meritorious by *Beckles*; (2) the United States expended little effort and expense in filing the response by using the same form motion in numerous *Johnson* cases; and (3) there was no lack of diligence or excessive delay on the part of Petitioner in requesting dismissal [Doc. 89]. The United States responded by challenging the first and second assertions, but not the third [Doc. 91].

After considering the parties' arguments and evaluating the instant case in light of the *Grover* factors, this Court does not believe that dismissal without prejudice would be appropriate.

First, the United States expended significant effort in responding to the petition. *Cf.* Rule 5 Governing Section 2255 Proceedings (explaining that the United States is not required to respond to a § 2255 motion unless ordered to do so by the district court). In addition to conducting an individualized evaluation of Petitioner's case, the United States researched and briefed several complex legal issues, including constitutional vagueness, retroactivity, and the categorical and modified categorical approaches. The fact that it used similar or identical analysis in other *Johnson*-based post-conviction challenges does not change the fact that the instant motion for relief resulted in, or at least contributed to, a significant expenditure of time and resources.

Second, allowing voluntarily dismissal without prejudice at this stage of the proceeding, i.e., after the United States responds to the merits of the petition, could result in widespread abuse and significant prejudice to the United States. Under the "Antiterrorism and Effective Death Penalty Act of 1996," petitioners cannot file a second or successive § 2255 petition in the district court until they move in the United States Court of Appeals for an order authorizing the district court to consider that motion. *See* Rule 9 Governing Section 2255 Proceedings ("Before presenting a second or successive motion, the moving party must obtain an order from the appropriate court of appeals authorizing the district court to consider the motion."). The standard for gaining leave to file a second or successive petition is significantly higher than that involved with a petitioner's initial collateral challenge. 28 U.S.C. § 2255(h). It is not hard to imagine that prisoners might circumvent the successive filing barrier by submitting an initial § 2255

challenge, securing a response from the United States, reviewing that response to determine whether he likes or dislikes his chances of success, moving to voluntarily dismiss without prejudice under Rule 42(a)(2) when he concludes that the odds of a favorable ruling are too slim, and submitting an entirely new petition with distinct grounds of collateral attack. He could then repeat the process.

Third, this Court disagrees that this case is distinguishable from a typical § 2255 motion because the theories for relief were legitimate and meritorious when filed [Doc. 89 pp. 1, 4 ("[Petitioner] has provided the Court with a sufficient basis for the need to take a dismissal, namely, that the developing body of law in this matter morphed since the filing of the § 2255 motion from a legitimate arguable claim, to a meritorious claim (due to *Pawlak[v. United States*, 822 F.3d 902 (6th Cir. 2016)]), then finally a non-meritorious claim (due to *Beckles*).")]. While it is true that the Sixth Circuit held "that *Johnson*'s vagueness analysis applie[d] equally to the Guidelines and, as a result, that the parallel residual provision contained in Section 4B1.2 was void for vagueness," *Pawlak*, 822 F.3d at 911, neither it nor the Supreme Court ever held that the resulting rule applied on collateral review, *see In re Embry*, No. 16-5447, 2016 WL 4056056, at *1 (6th Cir. July 29, 2016) (recognizing that "it is not clear whether to treat *Pawlak* as a new rule that the Supreme Court has not yet made retroactive [to cases on collateral review] or as a rule dictated by *Johnson* that the Supreme Court has made retroactive"). In fact, the courts within this district have consistently held that it would not. *Henley v. United States*, No. 1:14-cv-328-CLC, 2016 WL 2643002, at *2–5 (E.D. Tenn. May 9, 2016) (concluding that the Supreme Court had not yet "made" *Johnson*'s application in the Guideline context retroactive on collateral review); *Lynn v. United States*, No. 3:15-cv-571-TWP, 2016 WL 1258487, at *2–4 (E.D. Tenn. Mar. 30, 2016) (same); *Barnes v. United States*, 3:15-cv-375-TAV, 2016 WL 1175092, at *2–4

6

(E.D. Tenn. Mar. 23, 2016) (same); *Frazier v. United States*, No. 1:09-cr-188-CLC, 2016 WL 885082, at *2–6 (E.D. Tenn. Mar. 8, 2016) (same). As such, *Beckles* merely confirmed what many courts within this district suspected to be true all along. *See Beckles*, 137 S. Ct. at 894 (explaining that the United States Sentencing Guidelines are "not amenable to vagueness challenges"); *Frazier*, 2016 WL 885082, at *1 n. 1 ("*Johnson*'s effect on [Section] 4B1.2(a)'s residual clause is doubtful.").

Finally, the *Descamps*-based claim has been pending before this Court since June 20, 2014. That claim lacked merit well before the Supreme Court decided *Johnson* and *Beckles*. Further, on November 2, 2016, the Sixth Circuit held that district courts could dismiss challenges similar to the ones raised by Petitioner as the result of a knowing and voluntary waiver. *In re Garner* No. 16-1655, 2016 WL 6471761, at *1–2 (6th Cir. Nov. 2, 2016). Six months passed before Petitioner requested that this Court allow the voluntary dismissal of his challenge without prejudice.

For the foregoing reasons, Petitioner's request for voluntary dismissal will be denied. *Accord United States v. Hamilton*, No. 3:12-cv-1928, 2012 WL 5292880, at *2 (N.D. Ohio Oct. 25, 2012) (denying attempt to voluntarily dismiss a fully briefed § 2255 motion "in the face of what [the petitioner] perceive[d] to be near certain defeat").

## II. STANDARD OF REVIEW

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting

*Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

## III. ANALYSIS

The supplemented petition challenges Petitioner's career offender designation based on both *Johnson* and *Descamps*. Specifically, Petitioner argues that both decisions removed Tennessee aggravated burglary from Section 4B1.2's definition of "crime of violence" and that he lacks sufficient predicate offenses for enhancement [Docs. 69, 84]. The United States opposes the requested relief for two reasons: Petitioner waived the right to collaterally challenge his sentence in his plea agreement; and, regardless, Tennessee aggravated burglary remains a crime of violence in light of *Beckles* [Docs. 77, 90, 91].

### A. Waiver

An informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable. *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999); *United States v. McGlivery*, 403 F.3d 361, 363 (6th Cir. 2005). The same is true even where that waiver prevents a petitioner from challenging his base offense level or career offender enhancement based on *Johnson*. *See In re Garner*, No. 16-1655, 2016 WL 6471761, at *1–2 (6th Cir. Nov. 2, 2016) (denying leave to file a successive petition challenging career offender enhancement based on *Johnson* where defendant voluntarily waived his right to raise collateral challenges).

"The Federal Rules of Criminal Procedure give the parties ample room to tailor plea agreements to different needs—whether they are the right to appeal, the right to benefit from future changes in the law or other concerns that the defendant . . . may have." *United States v.*

*Bradley*, 400 F.3d 459, 466 (6th Cir. 2005). For purposes of the instant case, Petitioner "knowingly and voluntarily" waived his right to collaterally challenge his sentence with the exception of cases which involve claims of ineffective assistance or prosecutorial misconduct [Doc. 30 ¶ 14(b)]. The fact that "developments in the law [have] expand[ed] [Petitioner's forfeited] right [of collateral review] . . . does not suddenly make [his] plea involuntary or unknowing or otherwise undo its binding nature." *United States v. McGlivery*, 403 F.3d 361, 363 (6th Cir. 2005). In light of the binding nature of Petitioner's wavier, the instant § 2255 motion will be dismissed. *Accord United States v. Avery*, No. 3:16-cv-2, 2016 WL 7467967, at *4–6 (S.D. Ohio Dec. 28, 2016) (denying *Johnson*-based challenge based on pre-*Johnson* waiver); *United States v. Strauss*, No. 16-cv-11397, 2016 WL 68733398, at *2–3 (E.D. Mich. Nov. 2, 2016) (same); *United States v. Muller*, No. 16-cv-20009, 2016 WL 6892268, at *2–3 (E.D. Mich. Nov. 2, 2016) (same).[3]

**B.    Challenge to Career Offender Designation Based on *Johnson***

To the extent that Petitioner argues that *Johnson* invalidated the Guideline residual clause and that his prior convictions for aggravated burglary cannot be categorized as crimes of violence without that provision, that argument fails because the United States Sentencing

---

[3] While this Court recognizes that courts within this district have repeatedly stated that it is "far from clear" that waiver of the right to collaterally challenge a sentence can be enforced to bar challenges based on the *Johnson* decision, *Mefford v. United States*, No. 3:15-cv-575, 2016 WL 1737094, at *1, n. 1 (E.D. Tenn. May 2, 2016); *Cox v. United States*, No. 3:15-cv-362, 2016 WL 552350, at *1, n. 1 (E.D. Tenn. Feb. 10, 2016); *Nance v. United States*, 3:15-cv-387, 2016 WL 527193, at *1, n. 1 (E.D. Tenn. Feb. 9, 2016), each of those cases alleged improper categorization under the ACCA. Unlike mistaken enhancement under the ACCA, improper career offender or base offense level enhancement does not result in a sentence "in excess of the maximum authorized by law." *See, e.g.*, *United States v. Thompson*, No. 3:06-cr-56, 2008 WL 6506506, at *14 (W.D. Ky. Nov. 7, 2008) (explaining that knowing and voluntary waivers are enforceable so longs as they do not result in a miscarriage of justice and that a miscarriage of justice arises where the sentence imposed exceeds the statutory maximum permissible).

Guidelines are "not amenable to vagueness challenges." *Beckles*, 137 S. Ct. at 894. Because *Johnson* does not affect Petitioner's status as a career offender, that decision cannot justify the requested relief.

### C. Challenge to Career Offender Designation Based on *Descamps*

To the extent that Petitioner argues that his prior convictions for aggravated burglary cannot qualify as predicate crimes of violence regardless of whether or not the Guideline residual clause remains in effect, that argument fails because every version of aggravated burglary that might not fall within the generic definition of burglary, i.e., the enumerated-offense clause, categorically qualifies as a career offender predicate under the Guidelines residual clause.

The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). It was this third clause—the residual clause—that the Supreme Court deemed unconstitutional in *Johnson*. 135 S. Ct. at 2563. The Court went on to make clear, however, that its decision did "not call into question . . . the remainder of the [ACCA's] definition of violent felony," i.e., the use-of-physical-force and enumerated-offense clauses. *Id.*

Section 4B1.1 classifies a defendant as a career offender if (1) he or she was at least eighteen years old at the time the defendant committed the instant offense; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) he or she has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S. Sentencing Manual § 4B1.1(a). Only Petitioner's satisfaction of the third prong—possession of two qualifying predicate convictions—is disputed [Docs. 69, 84]. Unlike the ACCA, the Guidelines are not subject to void for vagueness analysis and, as a result, the residual clause in Section 4B1.2 remained in effect after *Johnson*. *Beckles*, 137 S.Ct at 894.

To determine whether a particular offense qualifies as a violent felony under any of the prongs of the above definition, courts must first identify the precise crime of conviction. *Descamps*, 133 S. Ct. at 2285. They do so by employing a "categorical approach," under which they look "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283. When the conviction involves violation of a "divisible" statute—one which comprises multiple, alternative versions of the crime—courts resort to the "modified categorical approach" under which they "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* at 2281.

At all relevant times, Tennessee defined aggravated burglary as "burglary of a habitation as defined in §§ 39-14-401 and 39-14-402." Tenn. Code Ann. § 39-14-403(a). The statute incorporates two definitions: burglary as set forth in Tennessee Code Annotated § 39-14-402; and "habitation" as set forth in Tennessee Code Annotated § 39-14-401. The former provides that a person commits burglary when, "without, the effective consent of the property owner," he or she:

11

> (1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft, or assault;
>
> (2) Remains concealed, with the intent to commit a felony, theft, or assault in a building;
>
> (3) Enters a building and commits or attempts to commit a felony, theft, or assault; or
>
> (4) Enters any freight or passenger car, automobile, truck trailer, boat, airplane or other motor vehicle with intent to commit a felony, theft or assault or commits or attempts to commit a felony, theft[,] or assault[.]

Tenn. Code Ann. § 39-14-402(a). The latter defines "habitation" as "any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons." Tenn. Code. Ann. § 39-14-401(1)(A).

In the context of the residual clause, the categorical approach requires that the Court ask two questions: "whether the conduct encompassed by the elements of the offense, in the ordinary case, present a serious potential risk of injury to another," *James v. United States*, 550 U.S. 192, 2008 (2007); and whether "the risk posed by the crime in question is comparable to that posed by its closest analog among the enumerated offenses," *Sykes v. United States*, 131 S. Ct. 2267, 2273 (2011); *see also United States v. Evans*, 699 F.3d 858, 865 (6th Cir. 2012) ("[The] Sykes [decision] . . . limited the application of . . . [the] 'purposeful, violent, and aggressive' standard, noting that it had no precise textual link to the residual clause and clarifying that [it] should only be applied to crimes premised on strict liability, negligence, or recklessness.").

Every version of Tennessee aggravated burglary involves conduct that presents a serious potential risk of physical injury to another. *See United States v. Brown*, 516 F. App'x 461, 465 (6th Cir. 2013) ("The Tennessee burglary statute … is similar to generic burglary in the degree of risk posed in that there is 'the possibility of a face-to-face confrontation between the burglar and a third party ... who comes to investigate.'" (quoting *James*, 550 U.S. at 203)); *accord*

*Taylor v. United States*, 495 U.S. 575, 588 (1990) ("The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate."); *United States v. Skipper*, 552 F.3d 489, 493 (6th Cir. 2009) ("People do unpredictable things when they unexpectedly encounter burglars in their homes. The burglars often reciprocate. The result is confrontations that present a serious risk of physical injury regardless of the burglar's initial intent."); *United States v. Kirk*, 767 F.3d 1136, 1141 (11th Cir. 2014) ("Regardless of whether a burglar breaches the roofed portion of a structure, . . . [h]e may come into contact with the property's owners, occupants, or caretakers. His close physical presence to the structure could lead an innocent person to investigate why he is there, and his presence alone could reasonably be perceived by any of these persons as threatening. Either the innocent or the burglar might react violently." (citation omitted)). Further, that potential risk of physical injury is just as great as the risk posed by generic burglary. *See Brown*, 516 F. App'x at 465 ("We see no valid reason to distinguish the risk presented by the Tennessee burglary statute from that presented by generic burglary."); *accord United States v. Moore*, 578 F. App'x 550, 554 (6th Cir. 2014) (finding that burglary under Tenn. Code Ann. § 39-14-403(a)(3) presents the same "risk of confrontation and violence" as generic burglary and, thus, qualifies as a violent felony under the ACCA's residual clause). "The main risk of [generic] burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate." *James*, 550 U.S. at 203. The same is equally true of Tennessee aggravated burglary, which by definition can only occur in places "designed or adapted for the overnight accommodation of persons." Tenn. Code. Ann. § 39-14-401(1); *see*

13

*also Skipper*, 552 F.3d at 492 (finding that Ohio's burglary statute "arguably describes an even more dangerous scenario" than generic burglary because it requires that an innocent person was present or likely present during the offense).  Because the offense invariably involves a serious potential risk for injury, divisibility of the statute under *Descamps* is irrelevant.

## IV. CONCLUSION

For the reasons discussed above, Petitioner's request for voluntary dismissal of the action without prejudice [Doc. 89] will be **DENIED** and supplemented § 2255 motion [Docs. 69, 84] will be **DENIED** and **DISMISSED WITH PREJUDICE**.  The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous.  Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal.  *See* Rule 24 of the Federal Rules of Appellate Procedure.  Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**.  28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER ACCORDINGLY.**

             */s/ Harry S. Mattice, Jr.*
             HARRY S. MATTICE, JR.
           UNITED STATES DISTRICT JUDGE